UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Autumn Smith,                                   )
                                                )
                    Plaintiff,                  )
                                                )          No. 1:18-cv-252
-v-                                             )
                                                )          HONORABLE PAUL L. MALONEY
David A. Walters, et al.,                       )
                    Defendants.                 )
_____                )


## OPINION

Plaintiff Autumn Smith brings this suit raising claims under the First Amendment, Fourth Amendment, and Michigan law against the Mayor of Battle Creek, David Walters and three Battle Creek police officers: John Chrenenko, Stephanie Estree, and Kim Tuyls.

The matter is now before the Court on the Defendants' motion to dismiss. Defendants argue that Plaintiff has failed to state a constitutional claim and requests that the Court dismiss the state law claims as it has discretion to do under 28 U.S.C. § 1367. On Plaintiff's state law claims, Defendants raise additional arguments for dismissal on the merits or for immunity under Michigan law. The motion will be granted in part and denied in part.

## I.

Plaintiff Autumn Smith is an investigative journalist. She lives in Battle Creek and has written many articles critical of Battle Creek's public officials and its police department.

On May 3, 2016, Plaintiff attended a public Battle Creek City Commission meeting. Defendant David Walters presided over the meeting, in his official capacity as Mayor of

Battle Creek. Defendants John Chrenenko and Stephanie Estree provided security at the meeting.

During the portions of the meeting for public comment, Smith twice was ruled out of order by Defendant Mayor David Walters for comments she made, allegedly because Walters disagreed with the content of Plaintiff's comments. After the second time Walters ruled Plaintiff out of order, he told her to leave the meeting. She did so without incident.

But Plaintiff returned to the meeting a short time later and engaged in a whispered conversation with a state circuit court judge, who was sitting in the back row of the meeting. Walters evidently noticed the conversation because he gestured for Defendants Chrenenko and Estree to remove Plaintiff from the meeting.

Chrenenko approached Plaintiff told her that she had to leave. Estree allegedly grabbed Plaintiff's arm to escort her from the meeting. Plaintiff asserts that she told Estree not to touch her and then exited the chambers—by her count, 12 seconds after being approached by the officers, and 18 seconds after Walters gestured to the officers for Plaintiff's removal from the meeting.

The next day, the Battle Creek Police Department submitted a request to the Calhoun County prosecutor's office to charge Plaintiff with a misdemeanor for disorderly conduct. The charge was denied on May 15, 2016 but subsequently authorized on May 24, 2016.

Nearly three months passed. Then, on August 10, 2016, Plaintiff filed a request under Michigan's Freedom of Information Act, requesting documents about Walters' trip to China, which had been taken at public expense. Plaintiff asserts that she eventually wrote an article

critical of Walters for the expense of this trip, although it is unclear from the complaint when it was published, where it was published, or how it was critical of Walters. Plaintiff further asserts that, at the time the FOIA request was filed, Walters "would obviously have known" that the FOIA request would "lead to his personal embarrassment."

The very next day, Defendant Kim Tuyls—another Battle Creek police officer—filed a misdemeanor complaint alleging that Plaintiff had violated Michigan Compiled Law § 750.170 by disturbing the peace at the City Commission meeting on May 3, 2016. The district judge authorized the charge. The case proceeded to trial and Plaintiff was acquitted by a jury in February of 2017.

Plaintiff filed this suit raising various causes of action against Walters, Chrenenko, Estree, and Tuyls for their actions at the May 3, 2016 hearing and their involvement in the subsequent prosecution of Plaintiff.

## II.

A complaint must contain a short and plain statement of the claim showing how the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A defendant bringing a motion to dismiss for failure to state a claim under Rule 12(b)(6) tests whether a cognizable claim has been pled in the complaint. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide sufficient factual allegations that, if accepted as true, are sufficient to raise a right to relief

above the speculative level, *Twombly*, 550 U.S. at 555, and the "claim to relief must be plausible on its face" *Id.* at 570.  "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). If the plaintiff does not "nudge[] [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Generally, the Court can only look to the Complaint on a motion under Rule 12(b)(6). However, limited "other sources," such as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice," may be considered. *Tellabs, Inc. v. Makor Issues & Rights*, Ltd., 551 U.S. 308, 322 (2007); *see Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)) ("In evaluating a motion to dismiss, we 'may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein.'").

### III.

Defendants have collectively moved to dismiss the claims against them by challenging the sufficiency of the allegations in Plaintiff's complaint as well as invoking qualified immunity under federal law and governmental immunity under state law.

**A. Retaliatory Prosecution as a Violation of the First Amendment**

As a general matter, "'[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (citations omitted).

There are three elements to a typical First Amendment retaliation claim: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) ... the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In a First Amendment retaliatory-prosecution claim—which is the precise claim Plaintiff makes here—a plaintiff must also show that the prosecution lacked probable cause. *Hartman v. Moore*, 547 U.S. 250, 265–66 (2006); *Barnes v. Wright*, 449 F.3d 709, 720 (6th Cir.2006).

Plaintiff's theory is not a model of clarity. As the Court views it, she has presented two overlapping theories of First Amendment retaliation, but only one is actionable as a claim for retaliatory prosecution as pleaded in her First Amended Complaint.

She first alleges that she was engaged in protected activity while being present at the City Commission meeting, and that her subsequent removal by Defendants Walters, Chrenenko, and Estree was an adverse action motivated by past critical articles Plaintiff had written about Battle Creek, its officials, and its police department.

Second, Plaintiff also asserts that she engaged in protected First Amendment activity by filing a FOIA request for documents relating to the Walters' travel to China on city business. The next day, Defendant Tuyls initiated a criminal complaint against Plaintiff for the May 3, 2016 incident, despite charges having been authorized several months prior. At trial, Cherenenko and Estree testified against Plaintiff; Plaintiff alleges that they provided false testimony.

Defendants challenge Plaintiff on essentially every element of her claim.[1]

First, they argue that Plaintiff failed to establish that she engaged in protected conduct. They note that "Plaintiff fails to assert any fact to allege that she was engaged in protected speech at the City of Battle Creek Commission meeting on May 3, 2016." Defendants also fault Plaintiff for including a list of her publications which she deemed critical of Battle Creek or its officials, but without listing the publications where the articles appeared, or how the Defendants would have been aware of them.

The Court finds Defendants' arguments markedly unpersuasive. When Plaintiff's well-pleaded facts are taken as true and viewed as a whole, the Court finds that Plaintiff's published articles critical of Battle Creek officials, her public comments at the meeting, and her FOIA request to be plausibly considered protected activity for First Amendment purposes. *See, e. g., Handy-Clay v. City of Memphis*, No. 10–2927, 2013 WL 5305239, at *13 n.6 (W.D. Tenn. Sept. 19, 2013) (concluding that requesting public records "is a speech act protected by the First Amendment" and collecting cases).

---

[1] Defendants have not challenged whether the alleged adverse actions would deter a person of ordinary firmness from persisting in the protected activities.

Second, Defendants argue that Plaintiff has not established a nexus between her FOIA request and the adverse action. The Court disagrees. The criminal proceeding against Plaintiff was instituted a single day after the FOIA request was filed, but more than three months after the incident occurred, and nearly three months after the Calhoun County Prosecutor's Office authorized the charge. The temporal proximity alone creates a reasonable inference that Walters, as the subject of the FOIA request, and Tuyls, as the initiating officer of the criminal complaint, were motivated to retaliate against Plaintiff for protected activity.

Next, Defendants assert that it is not plausible that the adverse action was motivated at least in part by Plaintiff's protected conduct. Once again, Defendants take a myopic view of the facts pleaded by Plaintiff. They argue that Plaintiff published only one article supposed to be critical of the Defendants in a one-year span prior to May 3, 2016 meeting. They argue that the dearth of critical articles prior to May 3, 2016 is a lack of temporary proximity and thus, there is no nexus between the claimed retaliation and the protected conduct.

However, Plaintiff has documented an extensive history of publishing articles critical of the City of Battle Creek and its police department, dating back to June of 2013; she published no fewer than 14 articles critical of Battle Creek public governance prior to the May 3, 2016 meeting. It is a reasonable inference at this stage, to believe that Walters, Chrenenko, and Estree were aware of Plaintiff's writings prior to the May 3, 2016 meeting. It is likewise plausible that the adverse action taken at the May 3, 2016 meeting—removing Plaintiff from a public meeting—was motivated, at least in part, by Plaintiff's prior First

Amendment activity. It is also a reasonable inference that Walters and Tuyls were aware of Plaintiff's FOIA request at the time the misdemeanor charge was actually sought.

Finally, the parties dispute whether probable cause existed to charge Plaintiff with violating the Michigan statute prohibiting disturbing the peace at a public meeting. Taking the facts as pleaded by Plaintiff, the Court agrees that it is at least plausible that probable cause did not exist to believe that Plaintiff committed the crime charged.

The statute provides in relevant part that:

> Any person who shall make or excite any disturbance or contention in any . . . public meeting where citizens are peaceably and lawfully assembled, shall be guilty of a misdemeanor.

M.C.L. § 750.170.[2]

Thus, the key inquiry for the Court is whether Plaintiff "ma[de] or excite[d] a disturbance" either by her public comments or by returning to the meeting and allegedly whispering with the circuit court judge after she had twice been ruled out of order by Walters and had voluntarily left the meeting.

Plaintiff asserts that no one else could hear her conversation and that it did not disturb the meeting or constitute a breach of the peace.

Where the only disturbance is created by law enforcement seeking to enforce Section 750.170, there exists no probable cause for the crime to have been committed. *See People v. O'Keefe*, 218 Mich. 1 (1922) ("In the language of the statute, there must be a 'disturbance or contention.' It does not appear that any person other than the officer was 'disturbed' or

---

[2] The Court must note that M.C.L 750.170's language "excite any contention" has been found unconstitutionally overbroad by both the Michigan Court of Appeals and the Sixth Circuit. *See Leonard v. Robinson*, 477 F.3d 347, 360 (6th Cir. 2007); *People v. Vandenberg*, 307 Mich. App. 57 (2014); *People v. Mash,* 45 Mich.App. 459 (1973).

that there was any 'contention' until he sought to make the arrest."). Here, based on the current posture of the case, Plaintiff may have been ruled "out of order" as defined by Battle Creek City Ordinance, but the Court cannot say with certainty that her conduct created probable cause to charge her with a breach of the peace under state law. In other words, simply being ruled out of order may not be sufficient, as a matter of law, to create probable cause to believe that the state crime of disturbing a public meeting has been committed. Thus, Defendants have not demonstrated at this stage in the litigation that Plaintiff's claim fails based on the existence of probable cause.

However, to the extent that Plaintiff premises her retaliatory prosecution claim on allegedly false trial testimony given by Defendants Estree and/or Cherenko, she has failed to state a claim. These defendants are entitled to absolute immunity for testimony offered at trial. *See Briscoe v. LaHue,* 460 U.S. 325, 325 (1983) (holding that law enforcement officials enjoy absolute immunity from civil liability under 42 U.S.C. § 1983 for perjured testimony that they provide at trial); *see also Rehberg v. Paulk,* 566 U.S. 356 (2012) (reaffirming doctrine and extending immunity to grand jury witnesses). Plaintiff has not pleaded any involvement by Estree or Chrenenko in the maintenance of the criminal proceedings against her, other than their allegedly false testimony at trial. Therefore, the claims as to these Defendants must fail.

In sum, Plaintiff has pleaded a valid First Amendment retaliatory prosecution claim against Defendants Walters and Tuyls for the filing of the misdemeanor criminal complaint three months after the public meeting, and one day after Smith filed a FOIA request seeking information about Walters' official activities as Mayor of Battle Creek. However, as noted,

she has not pleaded actionable involvement by Estree or Chrenenko as to the malicious prosecution.

## B. Excessive Force

Plaintiff claims that Defendant Estree violated her right to excessive force by grabbing her arm and escorting her to leave the meeting. Plaintiff's conclusory allegation is not a claim for which relief can be granted, as an excessive force claim—whether under the Fourth, Eighth, or Fourteenth Amendment—requires "something more than *de minimis* force." *Leary v. Livingston Cty.*, 528 F.3d 438, 443 (6th Cir. 2008) (citations omitted). In *Livingston*, even a "karate chop kind of deal" to the back of the plaintiff's neck did not give rise to an excessive force claim where plaintiff conceded that "it didn't hurt or nothing." *Id.* Plaintiff's claim—that Estree grabbed her arm while escorting her out of the meeting—alleges no more than *de minimis* force. Accordingly, Plaintiff has failed to allege facts that would give rise to a claim for excessive force in her First Amended Complaint.

## C. Malicious Prosecution under Michigan State Law

Plaintiff has also pleaded a state law claim for malicious prosecution. To survive a motion to dismiss, plaintiff must plead (1) that the defendant initiated or continued a criminal prosecution against her, (2) that the criminal proceedings terminated in her favor, (3) the absence of probable cause for those proceedings, and (4) that the action was undertaken with malice or a primary purpose other than bringing the offender to justice. *King v. Arbic*, 159 Mich. App. 452, 406 N.W.2d 852, 858 (Mich. App. 1987); *see also Matthews v. Blue Cross & Blue Shield*, 572 N.W.2d 603 (Mich. 1998); *Drouillard v Metropolitan Life Ins. Co.*, 310

NW2d 15 (Mich. Ct. App. 1981). For the reasons described in Section III.A, the Court finds that Plaintiff has stated a claim as to Defendants Walters and Tuyls.

### D. Assault and Battery under Michigan State Law

As a corollary to Plaintiff's claim for excessive force, she maintains a claim for assault and battery as to Defendant Estree. Defendants have not challenged that Plaintiff has met the elements of such a claim, but assert that the claim is barred via governmental immunity. The argument will be addressed below.

### E. Qualified Immunity or Immunity under Michigan State Law

In addition to seeking dismissal of Plaintiff's claims, Defendants invoke qualified immunity as to Plaintiff's claims under § 1983 and governmental immunity from Plaintiff's state-law tort claims.

#### i. Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "If no reasonably competent officer would have taken the same action, then qualified immunity should be denied; however, 'if officers of reasonable competence could disagree on [the legality of the action], immunity should be recognized.'" *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)) (alteration in original).

"Dismissals on the basis of qualified immunity are generally made pursuant [to] summary judgment motions, not 12(b)(6) sufficiency of pleadings motions." *Grose v. Caruso*,

284 F. App'x 279, 283 (6th Cir. 2008). Qualified immunity is a fact-intensive inquiry and is best resolved after discovery, when the record more clearly indicates that qualified immunity is proper. *Id.*

"This court can resolve the qualified immunity inquiry based on a pre-answer motion to dismiss ... only if it is clear that no violation of a clearly established constitutional right could be found under any set of facts that could be proven consistent with the allegations or pleadings." *Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005) (citing *Cooper v. Parrish*, 203 F.3d 937, 944 (6th Cir. 2000)).

Put another way, "whether a particular complaint sufficiently alleges a clearly established violation of law cannot be decided in isolation from the facts pleaded." *Ashcroft v. Iqbal*, 556 U.S. 662, 673 (2009). As a result, "the standard for whether [a defendant] is entitled to qualified immunity essentially collapses into the standard for whether [a plaintiff] has sufficiently plead his claim for relief." *Jackson v. Jernigan*, 3:16-CV-750-JHM, 2017 WL 1962713, at *7 (W.D. Ky. May 11, 2017) (citing *Keating v. City of Miami*, 598 F.3d 753, 760 (11th Cir. 2010) ("At the motion to dismiss stage in the litigation, the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined") and *Morgan v. Swanson*, 659 F.3d 359, 384 (5th Cir. 2011) ("At the 12(b)(6) stage, to hold that the defendant violated the law at step one of the qualified-immunity analysis ... is simply to say that the plaintiff has stated a claim upon which relief may be granted")). Accordingly, the Court may reconsider qualified immunity upon Plaintiff's First Amendment claim after discovery, but finds now that the facts alleged in the complaint may give rise to a clearly-established constitutional violation.

ii. Governmental Immunity

In *Odom v. Wayne County*, 482 Mich. 459, 760 N.W.2d 217 (2008), the Michigan Supreme Court reaffirmed and applied the intentional-tort-immunity test of *Ross v. Consumers Power Co.*, 420 Mich. 567, 363 N.W.2d 641 (1984):

> [W]e provide these steps to follow when a defendant raises the affirmative defense of individual governmental immunity. The court must do the following:
>
> .... (2) If the individual is a lower-ranking governmental employee or official, determine whether the plaintiff pleaded an intentional or a negligent tort....
>
> (4) If the plaintiff pleaded an intentional tort, determine whether the defendant established that he is entitled to individual governmental immunity under the Ross test by showing the following:
>
> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,
>
> (b) the acts were undertaken in good faith, or were not undertaken with malice, and
>
> (c) the acts were discretionary, as opposed to ministerial.

*Odom*, 760 N.W.2d at 229.

First, Defendant Estree invokes governmental immunity as a defense to Plaintiff's assault and battery claim. In response, Plaintiff notes that she has pleaded facts to avoid governmental immunity by asserting in her complaint that Estree "knew she was not acting within the scope of her authority as a police officer" because: (a) Plaintiff had a right to attend the meeting, (b) Plaintiff did not breach the peace; and (c) Estree was not authorized to use force before giving Plaintiff a reasonable opportunity to comply.

This is unpersuasive. Estree was acting in the course of her employment: She was acting as security for a City Commission meeting, and the official presiding over the meeting directed her to remove Plaintiff from the meeting for having twice been ruled out of order. Estree was also acting in good faith by following the directive of Walters. And finally, the act was also a discretionary act, as opposed to a ministerial act, because "[a] police officer's determination regarding the type of action to take ... constitute[s] discretionary action ..." *Hart v. Danak*, No. 280975, 2010 WL 1404431 at *4 (Mich. Ct. App. Apr.8, 2010), citing *Ross*, 420 Mich. 567, 363 N.W.2d 641, 647 (1984). Estree used her discretion to place her hand on Plaintiff's arm to escort her from the meeting. Accordingly, the Court finds that Estree is entitled to governmental immunity on Plaintiff's assault and battery claim as Plaintiff cannot plausibly assert that Estree was not acting in the course of her employment, that she was not acting in good faith by responding to Walters' directive, or that her decision to place her hand on Plaintiff was ministerial.

 Defendants also invoke governmental immunity on Plaintiff's malicious prosecution state law claims. However, as the Court has already explained, Plaintiff has a plausible claim that depends in part on the Defendants having acted with a culpable intent. Plaintiff has alleged that Defendants were aware of news articles that were critical of them, and that they initiated a criminal proceeding against Plaintiff in retaliation for her FOIA request. This is sufficient to deny governmental immunity at the pleadings stage, as it is plausible that the facts will show that Defendants did not act in good faith.

One argument specific to Defendant Walters remains. He asserts that, as the highest-level executive officer for the City of Battle Creek, he is entitled to absolute immunity to

challenged conduct within his executive authority. *See* M.C.L. § 691.1407(5) ("A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority."). Plaintiff has not addressed this defense.

The Court agrees with Walters that it is undisputed that his conduct at the May 3, 2016 meeting was within the scope of his duties as the Mayor of Battle Creek. Therefore, he would have governmental immunity from a state-law claim arising out of his conduct at that meeting, including his decision to remove Plaintiff from the meeting. *Id.* No such claim has been raised.

However, Plaintiff has clearly alleged that Walters acted outside of his authority by causing the Battle Creek Police Department to initiate charges against her three months after they were authorized by the Calhoun County Prosecutor's Office, and one day after Plaintiff filed a FOIA request directed at his activities. Accordingly, Defendant Walters is not entitled to governmental immunity on Plaintiff's malicious prosecution claim, despite his status as the highest-level executive within the City of Battle Creek.

## IV.

For the reasons just explained, the Court will grant in part and deny in part the City Defendants' motion to dismiss.

## ORDER

Defendants' motion is **GRANTED IN PART AND DENIED IN PART:**

1. Plaintiff has stated a First Amendment retaliatory prosecution claim against Defendants Walters and Tuyls.

2. Plaintiff has failed to state a constitutional retaliatory prosecution claim or state-law malicious prosecution claim against Defendants Chrenenko and Estree.

3. Plaintiff has failed to state a Fourth Amendment claim as to Defendant Estree.

4. Plaintiff has stated a malicious prosecution claim against Walters and Tuyls under Michigan law.

5. Defendant Estree is entitled to governmental immunity on Plaintiff's assault and battery state-law claim.

6. Defendant Walters is not entitled to absolute immunity on the malicious prosecution claim.

7. Defendant Tuyls is not entitled to governmental immunity on Plaintiff's state-law malicious prosecution claim.

8. Defendants Chrenenko and Estree are **DISMISSED** from this action with prejudice.

**IT IS SO ORDERED**.

Date:  <u>March 14, 2019</u>                    <u>/s/ Paul L. Maloney</u>
                                               Paul L. Maloney
                                               United States District Judge