UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| AUTUMN SMITH, ) | |
|         Plaintiff, ) | |
| ) | No. 1:18-cv-252 |
| -v- ) | |
| ) | Honorable Paul L. Maloney |
| DAVID WALTERS and KIM TUYLS, ) | |
|         Defendants. ) | |
| ) | |

## OPINION

This matter is before the Court on cross motions for summary judgment: Plaintiff Autumn Smith moves for partial summary judgment (ECF No. 90) and Defendants David Walters and Kim Tuyls move for summary judgment (ECF No. 113). For the reasons to be explained, Plaintiff's motion will be denied and Defendants' motion will be granted.

### I.

Autumn Smith is an investigative reporter living in Battle Creek, Michigan. Smith has written several articles critical of members of the Battle Creek Police Department and Battle Creek City Government. Smith alleges that this tension boiled over on June 17, 2014, when she was assaulted by Battle Creek Chief of Police Jim Blocker. The Battle Creek Police Department ("BCPD") investigated the allegation and concluded that no assault had taken place. Smith was charged with filing a false police report. She was tried in February 2016, and at trial she maintained that the security footage of that alleged assault was destroyed by the City's Network Operations Manager, Charles Norton, who was working in concert with BCPD Officer Brad Wise. Smith was found guilty of filing a false police report. In April

2016, Smith was sentenced to community service. The presiding judge stated that time devoted to Smith's reporting work would satisfy the community service requirement. Nevertheless, Smith continues to claim that she was framed by Chief Blocker and the BCPD, and that Wise and Norton deleted exculpatory evidence.

Understandably, there exists tension between Smith and members of the city government. That provides context for the events that occurred on May 3, 2016. On that date, the Battle Creek City commission held a meeting, which Battle Creek Mayor David Walters presided over. Smith attended the meeting to comment on City Manager Rebecca Fleury's personal bankruptcy. During the first portion of the meeting set aside for public comment, Smith silently raised her hand and requested the opportunity to speak. Mayor Walters granted her permission. Smith took the podium and said "Good evening. Autumn Smith here in part to serve the Court-ordered community service from Jim Blocker assaulting me." Mayor Walters struck his gavel and told Smith that her comment was out of order. The two argued about whether the comment was, in fact, out of order, and eventually Smith was allowed to make her comments about Fleury.

The meeting continued without incident. Later in the meeting, there was a second period for public comment. Before this public comment period, Mayor Walters reviewed the rules for general public comment and noted that the rules prohibit the use of obscene or profane language, engaging in slanderous or defamatory speech, and engaging in conduct that interrupts or disrupts the meeting.

Smith requested another opportunity to speak and was again granted permission. She took the podium and said, "Good evening, Autumn Smith. And I would like to correct,

Mayor, I did introduce myself wrong last time. I'm here to serve my community service in part Court ordered because Brad Wise destroyed exculpatory evidence that did show Jim Blocker assaulting me. So I want to make that correction."

Walters again struck his gavel and said "Ma'am, you're out of order. That's the second time tonight that I've called you out of order for slanderous, you know, statements, so you're going to have to leave." Smith immediately stopped speaking, gathered her things, and left the meeting without incident.

Less than a minute later, Smith returned to the room to ask State Court Judge John Hallacy to sign a community service form for her. Another Battle Creek resident, Jeanine Deal, had taken the podium to make a comment, but Mayor Walters noticed that Smith had returned and was speaking to Judge Hallacy. Mayor Walters gestured to the BCPD Officers that were on duty, indicating that he wanted them to remove Smith from the meeting. Three officers approached Smith: Officer Jamie Vandyke, Lieutenant John Chrenenko, and Detective Stephanie Estree. Lieutenant Chrenenko Smith that she had to leave. Smith alleges that before she had a chance to leave, Detective Estree grabbed her arm to force her to leave. Smith told the officers not to touch her and exited the room.

Smith's protests were loud enough to be heard on video of the incident, and most of the meeting's observers turned to see what was going on in the back of the meeting room. Deal stopped speaking and turned to look. Mayor Walters said, "Excuse me, why don't you hang on a second, okay?" Once Smith left the room, Mayor Walters restarted Deal's speaking time and she began speaking again. The meeting continued without incident and ended about 10 minutes later.

3

Officer Vandyke prepared a police report about the incident and sent it to Defendant BCPD Officer Kim Tuyls. Officer Tuyls delivered the police report and a warrant request to the Battle Creek City Attorney's office, seeking a charge of Disorderly Conduct under the relevant Battle Creek city ordinance. On May 5, 2016, a city attorney denied the warrant request, and instead asked the police department to submit a request to the Calhoun County Prosecuting Attorney under MCL § 750.170 for Disturbing a Public Meeting. The police report and warrant request worksheet were sent back to Officer Tuyls.

Officer Tuyls did as she was asked: she delivered the police report and warrant request to the Calhoun County Prosecutor's office. The case was assigned to Assistant Prosecuting Attorney ("APA") Angela Easterday. APA Easterday initially denied the warrant request, seeking more information. On the warrant request worksheet, APA Easterday wrote "Was the suspect disrupting the meeting? Did the meeting cease to move forward due to her behavior?" The denied request returned, again, to Officer Tuyls, who worked with other BCPD officers to gather the additional information. By May 22, 2016, the supplemental investigation was completed. Officer Tuyls delivered the file back to APA Easterday on May 23, 2016. There is a handwritten note on the warrant request that reads "auth 5/24/16" but the file did not move for some time. Some of the delay is attributable to APA Easterday suffering an unexpected medical emergency. She was hospitalized and placed on medical leave for about six weeks between late May and early August 2016.

On August 11, 2016, APA Easterday signed and authorized the warrant request for Smith's disturbance of the May 3 meeting. The authorized request was returned to Officer Tuyls, who signed her name as the complaining witness. Calhoun County Tenth District

4

Court Judge Paul Beardslee found that the complaint provided probable cause to believe that Smith committed the offence and authorized the charge. The complaint was ultimately tried before a jury on February 16 and 17, 2017. At the close of the prosecutor's case in chief, Smith's counsel moved for a directed verdict on the issue of probable cause. Judge James Norlander denied that motion, finding that the prosecution had established a prima facie case of disturbing a public meeting under MCL § 750.170. When the case was submitted to the jury, Smith was acquitted.

Smith then filed this lawsuit. Several claims and Defendants have since been dismissed; The only remaining claims are retaliatory prosecution and malicious prosecution against Defendants Mayor Walters and Officer Tuyls.

Smith now moves for partial summary judgment, asking the Court to determine that there was no probable cause for the criminal prosecution and that Officer Tuyls violated the Fourth and Fourteenth Amendments by signing a "sham" affidavit. Defendants have also moved for summary judgment, asking the Court to determine that there was probable cause for the criminal prosecution.

## II.

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008). The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out an absence of evidence supporting the nonmoving party's case.

*Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The facts, and the inferences drawn from them, must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Once the moving party has carried its burden, the nonmoving party must set forth specific facts, supported by evidence in the record, showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252. The function of the district court "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Resolution Trust Corp. v. Myers*, 9 F.3d 1548 (6th Cir. 1993) (unpublished table opinion) (citing *Anderson*, 477 U.S. at 249).

However, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994)) (quotation marks removed). A mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734–35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). Accordingly, the non-moving party "may not rest upon [his] mere allegations," but must instead present "specific facts showing that there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)) (quotation marks omitted). In sum,

summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### III.

Smith brings two claims: First Amendment retaliatory prosecution and state law malicious prosecution. To establish a First Amendment retaliation violation, Smith must establish the following elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) . . . the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Since the adverse action Smith claims occurred was the initiation of a criminal charge against her, she must also show the absence of probable cause for the underlying charges. *Hartman v. Moore*, 547 U.S. 250, 261 (2006). The consequence is that Smith must show that Mayor Walters acted in retaliation, inducing APA Easterday to bring charges that would not have been initiated without his urging. *Id.* at 262. The "causal connection" Smith must establish "is not merely between the retaliatory animus of one person and that person's own injurious action, but between the retaliatory animus of one person and the action of another." *Id.* As a threshold matter on this point, Smith must prove that the decision to imitate charges was unsupported by probable cause. *Id.* at 263.

To establish a malicious prosecution claim under Michigan law, Smith must demonstrate (1) that the defendants initiated a criminal prosecution against her, (2) that the criminal proceedings terminated in her favor, (3) the absence of probable cause for those

7

proceedings, and (4) that the action was undertaken with malice or a primary purpose other than bringing her to justice. *Matthews v. Blue Cross and Blue Shield of Michigan*, 572 N.W.2d 603, 609-10 (Mich. 1998). "A person 'initiates' a prosecution if he makes false statements to prosecuting officials or willfully conceals facts from them, causing them to recommend issuance of a warrant." *Bass v. Spitz*, 522 F. Supp. 1343, 1348 (E.D. Mich. 1981). Thus, to sustain a claim for malicious prosecution, Smith must establish that false statements were made to prosecuting officials or that facts were willfully concealed. *Id.*

On both counts, the presence of probable cause to issue the warrant defeats Smith's claims. *See, e.g., Novak v. City of Parma*, 932 F.3d 421, 428-29 (6th Cir. 2019). That is the core question the Court must decide today: was there probable cause to authorize the criminal complaint? The underlying charge is MCL § 750.170, disturbance of lawful meetings. That statute provides:

> Any person who shall make or excite any disturbance or contention in any tavern, store or grocery, manufacturing establishment or any other business place or in any street, lane, alley, highway, public building, grounds or park, or at any election or other public meeting where citizens are peaceably and lawfully assembled, shall be guilty of a misdemeanor.

MCL § 750.170. Michigan courts have held that the "excite any contention" language must be read out of the statute. *People v. Mash*, 206 N.W.2d 767, 769-70 (Mich. Ct. App. 1973). The state court of appeals defined the "make any disturbance" language as

> Any act causing annoyance, disquiet, agitation, or derangement to another, or interrupting his peace, or interfering with him in the pursuit of a lawful and appropriate occupation or contrary to the usages of a sort of meeting and class of persons assembled that interferes with its due progress or irritates the assembly in whole or in part.

*People v. Weinberg*, 149 N.W.2d 248, 251 (Mich. Ct. App. 1967) (quoting Blacks Law Dictionary (4th ed. 1951)). Applying that definition, the state court of appeals has reasoned that for the purposes of MCL § 750.170, a disturbance is something less than threats of violence; it is an interruption of peace and quiet, a violation of public order, or the interference with or hindrance of a person's lawful pursuit of his occupation or rights. *Id.*

A reasonable officer may have probable cause to believe that a speaker is disturbing a public meeting when he "is determined to be out of order by the individual chairing the assembly." *Leonard v. Robinson*, 477 F.3d 347, 361 (6th Cir. 2007). However, if the only disturbance is created by law enforcement seeking to enforce § 750.170, there exists no probable cause for the crime to have been committed. *See People v. O'Keefe*, 187 N.W. 282, 283 (Mich. 1922).

More specifically, the rules that govern Battle Creek City Commission meetings provide as follows:

> A speaker will be ruled out-of-order by the Mayor or presiding Commissioner and the Commission will continue with its business when the speaker:
>
> (a) Becomes repetitive or speaks longer than the allotted time;
> (b) Attempts to yield any unused portion of time to other speakers;
> (c) Engages in a personal attack upon a city employee, administrator or Commissioner only if the personal attack is totally unrelated to the manner in which the employee, administrator or Commissioner carries out his or her public duties or office;
> (d) Uses obscene or profane language;
> (e) Engages in slanderous or defamatory speech;
> (f) Uses derogatory racial, sexual or ethnic slurs or epithets relating to any individual or category of persons; or
> (g) Engages in conduct that interrupts or disrupts the meeting.

(*See* ECF No. 16-1 at PageID.184.)

Under this framework, the Court must ask: was APA Easterday presented with evidence that established probable cause to charge Smith with disturbing a public meeting under MCL § 750.170? "The issue is not whether a crime was actually committed, but whether a reasonable basis existed for believing the accused guilty of the crime." *Hansen v. Westerville City School Dist. Bd. of Educ.*, 43 F.3d 1472, at *5 (6th Cir. 1994) (Table). Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). The establishment of probable cause requires only a probability or substantial chance of criminal activity, not an actual showing that criminal activity occurred. *Illinois v. Gates*, 462 U.S. 213, 244 n. 13 (1983). Thus, the standard for whether probable cause exists to prosecute someone is far lower than the requirement of proof beyond a reasonable doubt to find him guilty. *United States v. Ventresca*, 380 U.S. 102, 107 (1965). Finally, the fact that Smith was later acquitted does not prove a lack of probable cause for the underlying criminal charge. *See Baker v. McCollan*, 443 U.S. 137, 145 (1979).

To determine whether probable cause existed, the Court must examine what evidence was presented to APA Easterday: a police report containing eight eyewitness reports and two videos of the City Commission meeting.

The police report begins with an eyewitness report from Officer Vandyke. He explained that it was common practice for BCPD to assign officers to assist with security at City Commission Meetings. Officer Vandyke goes on to outline the facts, largely as they are explained above: Smith spoke once and was ruled out-of-order but allowed to complete her statement. When she was allowed to speak again, she was ruled out-of-order again and asked

10

to leave. Officer Vandyke notes that Smith "immediately" returned to speak with Judge Hallacy in the back row (ECF No. 102-12 at PageID.1392). Officer Vandyke approached Smith, along with Lieutenant Chrenenko and Detective Estree. Lieutenant Chrenenko asked Smith to leave, and Detective Estree "motioned her arm" to indicate that Smith should leave. In Officer Vandyke's telling, Smith then "jolted herself backward, yelling 'don't touch me.' " (*Id.*) Smith was "boisterous" but ultimately left.

The supplemental report that APA Easterday asked for contains a report from Lieutenant Chrenenko. Lieutenant Chrenenko states that Smith "raised her voice and that caused a disruption in this public meeting" (*Id.* at PageID.1394). He reports that Mayor Walters asked Deal to "stop until the disruption by Smith was over." (*Id.*)

The supplement also contains Detective Estree's perspective. Detective Estree reports that "Smith began to cause a disturbance that caused the meeting to stop and the people in the front of the room turn [sic] around towards the commotion" (*Id.* at PageID.1396). Detective Estree then provides five eyewitness reports. Linda Morrison turned around to see what was going on (*Id.*). Shawna Allen stated that Smith "caused such a disturbance" that Mayor Walters had to interrupt Deal and eventually reset her speaking time (*Id.*). Allen "advised that the disturbance caused her to turn in her seat to see what was going on at the back of the room" (*Id.*). Chris Lussier "heard a commotion at the back of chambers which caused him to turn around to look to see what was going on" (*Id.*). Marcie Gillette "advised without a doubt Smith caused a disturbance to the point the Mayor had to delay the meeting because of the commotion she was causing" (*Id.*). And Mayor Walters stated that "Smith was causing such a disturbance in the back of the room" that he was "forced

11

to ask Deal to stop because she could not be heard over the disturbance and it was not fair to Deal" (*Id.* at PageID.1396-97). At that point, Mayor Walters stated that "everyone's attention was on Smith at the back of the room and caused all to turn around and look towards the disturbance." (*Id.*).

There is no evidence in the record, save for Smith's speculation, that Mayor Walters instructed any of these witnesses to lie. There is no evidence that Mayor Walters acted in concert with APA Easterday, and frankly, there is no evidence that Mayor Walters acted at all after the close of the supplemental investigation. APA Easterday testified that she has never spoken to Mayor Walters (ECF No. 114-10 at PageID.1548). Therefore, the Court cannot conclude that APA Easterday was given false information in the police report.

As Smith recognizes, the video evidence "show[s] precisely what, in fact happened." (ECF No. 111 at PageID.437). The videos verify all the above events. The Court has viewed both videos, which show the incident from different angles. Smith leaves calmly, but when she returns to the meeting room, there is clearly a disruption. Deal, at the podium, stops speaking. Nearly everyone in the room turns to see what is going on at the back of the room, and the disruption is audible on the video. It is plain from the videos that some sort of disruption occurred, and it occurred when Smith returned to the meeting room.

The evidence presented to APA Easterday at the time she signed the complaint is more than sufficient to establish probable cause that Smith "made a disturbance" at the May 3, 2016 Battle Creek City Commission meeting. It is undisputed that APA Easterday knew that Smith was ruled out-of-order twice. At that point, with that information alone, there may have been probable cause to believe Smith was disturbing the meeting. *See Leonard*, 477

12

F.3d at 461. But not only was Smith ruled out-of-order twice; she left the meeting and returned. Eight eyewitnesses stated that she created some sort of disturbance, with several witness reporting that they turned in their seats to see what was going on. Deal had to stop speaking. Mayor Walters had to pause the meeting for Smith's actions to settle. Further, nothing in the police report or the video indicates that the disturbance was created by law enforcement; each witness cites Smith as the creation or source of the disturbance. It was Smith's return to the room and her conversation with Judge Hallacy that created a disturbance. Accordingly, APA Easterday was presented with evidence sufficient to create probable cause to issue the warrant.

To stave off this conclusion, Smith argues that her statements were not slanderous or out-of-order because they were true. This argument fails. The Court will not conduct a trial-within-a-trial to discern the truth of her statements, not least because a jury has already done so.

It is established that a prior criminal conviction may work as estoppel in a subsequent civil proceeding. *See, e.g., Allen v. McCurry*, 449 U.S. 90, 94 (1980). A federal district court must look to state law to determine what preclusive effect should be given to that prior state proceeding. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Under Michigan law, collateral estoppel "precludes relitigation of an issue in a subsequent, different cause of action between the same parties when the prior proceeding culminated in a valid judgment and the issue was actually and necessarily determined in the prior proceeding." *Bullock v. Huster*, 532 N.W.2d 202, 204 (Mich. Ct. App. 1995). On February 17, 2016, a jury determined that Blocker did not assault Smith, and instead found Smith guilty of filing

13

a false police report. To prove that charge, the prosecutor was required to prove beyond a reasonable doubt that the report of the assault was false, and that when Smith made the report, she knew it was false. *See* MCL § 750.411a(1). The jury found that Smith made a false report, which means that the jury unambiguously found that Blocker did not assault Smith. That finding prevents Smith from relitigating the question in the present case. Smith's statements that Blocker assaulted her are demonstrably false.

As such, Mayor Walters properly enforced the Battle Creek City Commission's meeting rules by ruling Smith out-of-order, and he was within the bounds of the law when he asked her to leave the meeting. Smith's argument that her statements were not slanderous does not change the Court's conclusion that there was probable cause.

Moreover, the issue of probable cause was actually and necessarily determined in the criminal proceeding. On February 16, 2017, Smith's trial counsel moved for a directed verdict on the issue of probable cause. Judge James Norlander, presiding, ruled that the prosecution had established a prima facie case of disturbance of a lawful meeting, stating as follows:

> "THE COURT: Well, I would agree that words themselves don't amount to the definition of disturbance. I did instruct the jury that a disturbance is defined as the unlawful interference through any act causing annoyance, disquiet, agitation or derangement contrary to the usages of a sort of the meeting assembled that interferes with its due process or irritates the assembly in whole or in part.
> 
> "Uh, I – I -- I was careful in defining the -- the word disturbance in that it must be -- it must involve an act that causes these things; not just words themselves.
> 
> "This case doesn't just involve words. It must be an act causing the annoyance. And in light most favorable to the prosecution, we have the testimony of Dave -- David Walters. Who indicated -- I think right at the end of his direct

14

examination why this act of the defendant caused a disturbance. He -- he indicated that the next speaker could not be heard. That everyone turned around. They were they were, um, annoyed or irritated. And they -- he needed to stop the meeting to allow the speaker to continue."

"So, it was -- it was more the acts of the defendant that caused the annoyance and not her words. And so I'm going to deny the motion based on the definition of disturbance that I gave the -- the jury."

(ECF No. 114-15 at PageID.1581-82.) This alone is sufficient: a plaintiff is collaterally estopped from litigating the issue of probable cause to arrest when it is fully explored in a criminal proceeding, as in a preliminary exam, or in this case, at trial. *See, e.g., Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987), *overruled on other grounds by Frantz v. Village Of Bradford*, 245 F.3d 869, 874 (6th Cir. 2001). Therefore, even without this Court's independent probable cause analysis, the issue is closed: There was probable cause to believe that Smith made a disturbance at the May 3, 2016 meeting in violation of MCL § 750.170.

Given this conclusion, Smith cannot establish the elements of either claim that remains. With probable cause, there can be no malicious or retaliatory prosecution. Therefore, Defendants are entitled to summary judgment on both claims, and the Court need not reach the remainder of Smith's arguments.[1]

---

[1] Smith argues that she is entitled to summary judgment on the alleged violations of the Fourth and Fourteenth Amendments committed by Officer Tuyls. However, the Court denied Smith's motion to amend her complaint to include additional counts on these claims, so they are not properly before the Court (See ECF No. 89). Smith now argues that these issues underlie the malicious prosecution claims, but that is not an issue the Court must reach given the conclusion that there was probable cause.

## IV.

For these reasons, the Court finds that APA Easterday had probable cause to authorize the criminal complaint against Smith. Accordingly, Smith's partial motion for summary judgment is denied, and Defendants' motion for summary judgment is granted.

## ORDER

**IT IS HEREBY ORDERED** that Plaintiff's motion for partial summary judgment (ECF No. 90) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment (ECF No. 113) is **GRANTED**.

Judgment to follow.

**IT IS SO ORDERED.**

Date: June 5, 2020                                    /s/ Paul L. Maloney
                                                     Paul L. Maloney
                                                     United States District Judge